UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

JEREMY SCHAPP; and JAMES COE, on
behalf of Themselves and on Behalf of All
Others Similarly Situated,

                      Plaintiffs,

   -against-                                   6:12-CV-0841 (LEK/DEP)

MASTEC SERVICES COMPANY, INC.;
and HALSTED COMMUNICATIONS,
LTD.,

                      Defendants.
───────────────────────────────────────

## MEMORANDUM-DECISION and ORDER

**I.   INTRODUCTION**

On May 22, 2012, Plaintiffs Jeremy Schapp and James Coe (collectively, "Plaintiffs") brought this action alleging wage and hour violations of state and federal employment laws on the part of Defendants MasTec Services Company ("MSC") and Halsted Communications, Ltd. ("Halsted") (collectively, "Defendants"). Dkt. No. 1 ("Complaint"). Presently before the Court is Defendants' Motion to stay or dismiss this case and compel arbitration. Dkt. No. 16 ("Motion"). Plaintiffs have filed a Response in opposition to the Motion, and Defendants have, in turn, filed a Reply to the Response. Dkt. Nos. 22 ("Response"), 26 ("Reply"). For the following reasons, the Court reserves decision on this Motion and stays this matter pending the Second Circuit's decision on the appeal of Raniere v. Citigroup Inc., 827 F. Supp. 2d 294 (S.D.N.Y. 2011) and the United States Supreme Court's decision In re American Express Merchants' Litigation ("Amex III"), 667 F.3d 204 (2d Cir), cert granted, sub nom. American Express Co. v. Italian Colors Restaurant, 133 S. Ct. 594 (2012) (No. 12-133).

**II.     BACKGROUND**

    **A. The Complaint**

The Court recounts the factual background for this action as alleged by Plaintiffs in their Complaint. While the Court provides facts to add context to and resolve the instant Motion, the Court does not recite all of the allegations in their entirety. For a more complete statement of the facts and legal claims, reference is made to the Complaint.

Plaintiffs and the putative class that they seek to represent are current or former employees of MSC and Halsted who worked as satellite television and/or cable installation technicians within the past six years. Compl. ¶ 1. Plaintiffs both live and work in the New York and—at all relevant times—were Defendants' employees. Id. ¶¶ 12-13, 16. MasTec is a national infrastructure construction company that services the sewer, energy, water, communications, and government sectors throughout New York. Id. ¶ 23. MasTec's primary business is the design, engineering, installation, and maintenance of internal and external telecommunications and energy networks that serve as the basis for telecommunications, Internet, and energy systems. Id. Halsted is an installation contractor which primarily installs services provided by DIRECTV. Id. ¶ 24. Halsted provides Installation Technicians for DIRECTV in New York, Pennsylvania, and New England. Id. In June 2011, MasTec acquired Halsted. Id. ¶ 25.

To install satellite television systems and equipment, Defendants employ installation technicians. Id. ¶ 26. All of the installation technicians perform the same basic job functions, namely, the installation, testing, troubleshooting, repairing, and upgrading of equipment that receives satellite signals for residential and business purposes. Id. Within the applicable limitations periods, Defendants have employed more than 100 installation technicians in New York. Id.

The primary basis of Plaintiffs' claims is that the technicians are required to work more than forty hours a week and are: (1) not compensated for their overtime work; and/or (2) not compensated at the statutorily prescribed rate of time-and-a-half for overtime work.  See id. ¶¶ 27-42.  The current compensation scheme employed by Defendants, therefore, allegedly runs afoul of the clear terms of the Fair Labor Standards Act ("FLSA") and New York State labor and employment laws.  Id.

**B. Defendants' Motion**

In their Motion, Defendants argue that Plaintiffs agreed to arbitrate their claims by reading the MasTec, Inc. Employee Handbook ("the Handbook") and signing an "Employee Acknowledgment" page at the end of the Handbook.  Defendants' Memorandum of law in support of their Motion to dismiss (Dkt. No. 18) ("Def.'s Mem.") at 2.  Defendants' "Dispute Resolution Policy" ("the Policy") is contained in the Handbook and identified clearly in the Handbook's table of contents.  Id.  Further, the Handbook defines the term "Company," as used throughout the Handbook and in the Policy, to mean "MasTec, Inc., its divisions and affiliates."  Id. at 3.  The Policy states that it is governed by the Federal Arbitration Act ("FAA"), and that it "applies to any dispute arising out of or related to Employee's employment with the Company or termination of employment."  Id.

The Policy "requires all such disputes that have not otherwise been resolved to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial."  Id.  In its terms, the Policy states that it "applies, without limitation, to disputes regarding . . . compensation, . . . [the] Fair Labor Standards Act, . . . [and] state statutes, if any, addressing the same or similar subject matters."  Id.  Further, the Policy explicitly states that "there will be no

3

right or authority for any dispute to be brought, heard or arbitrated as a class or collective action."

Id. at 4. The Policy sets forth additional rights, remedies, and procedures that would be available to an employee at arbitration before stating that

> an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Policy. . . . In order to be effective, the signed and dated Form must be returned to the Legal Department within 30 days of the Employee's receipt of this Policy. An Employee choosing to opt out will not be subject to any adverse employment action as a consequence of that decision.

Id. Defendants assert that Plaintiffs signed the acknowledgment pages and neither filed an opt-out form. Id. at 5. Therefore, Defendants argue that Plaintiffs' claims in this action must be arbitrated and are not properly before the Court.

### C. Plaintiffs' Response

In their Response, Plaintiffs do not contest the existence of an arbitration clause; rather, they raise several arguments as to its enforceability and applicability. First, Plaintiffs contend that compelling arbitration will prevent Plaintiffs from vindicating their statutory rights and will therefore violate FLSA because: (1) it enforces a low-value, high-cost mechanism for pursing individual claims; (2) it bars the pursuit of a class action; and (3) class waivers in arbitration clauses are not *per se* enforceable. Resp. at 8-15. Second, Plaintiffs argue that waivers of the collective-action provision of FLSA are *per se* unenforceable because: (1) the ability to proceed collectively is an individual substantive right provided by FLSA; (2) prohibiting FLSA class actions undermines congressional policies underlying FLSA and impedes the statute's enforcement; (3) such waivers violate the National Labor Relations Act's ("NLRA") proscription on banning concerted action; and (4) such waivers are unenforceable under the Norris-LaGuardia Act. Id. at 15-22. Next, Plaintiffs argue that the arbitration clause is unenforceable because it is unconscionable. Id. at 22-24. Finally,

Plaintiffs argue that Plaintiff Coe never entered into an arbitration agreement with Defendants. Id. at 24-25. In support of their arguments on the conflict between the arbitration clause and the statutory rights endowed by FLSA and the NLRA, Plaintiffs rely heavily on the holding and analysis from Raniere and Amex III.

### D. Defendants' Reply

In their Reply, Defendants oppose each of the arguments raised in Plaintiffs' Response. Reply. While Defendants seek to distinguish Amex III, they also contend that there is good reason to think that neither it nor Raniere are good law. Id. at 4-5. To this end, Defendants note that Raniere is currently on appeal before the Second Circuit and that a petition for certiorari has been filed with the Supreme Court regarding Amex III. Id. at 5 n.2.

## III. LEGAL STANDARD

"In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citation omitted); see also Lismore v. Societe Generale Energy Corp., No. 11 Civ. 6705, 2012 WL 3577833, at *1 (S.D.N.Y. Aug. 17, 2012) ("In a typical motion to compel arbitration, the Court would apply a standard similar to that of a summary judgment motion . . . and some discovery may be allowable or necessary." (citing DuBois v. Macy's East Inc., 338 F. App'x 32, 33 (2d Cir. 2009))); Santos v. GE Capital, 397 F. Supp. 2d 350, 353 (D. Conn. 2005). "Accordingly, a court must grant a motion to compel arbitration if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." Ryan v. JPMorgan Chase & Co., No. 12 CV 4844, 2013 WL 646388, at *2 (S.D.N.Y. Feb. 21, 2013) (citing FED. R.

CIV. P. 56(c); Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986)).

A fact is material when it "might affect the outcome of the suit under the governing law ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment." Id.  A dispute regarding a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the nonmoving party.  See id.  A court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F .3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

The party opposed to arbitrating its claim "bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000). In addition, the party claiming the arbitration agreement is invalid "on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood" that such costs will be incurred. Ryan, 2013 WL 646388, at *2 (quoting Green Tree Fin., 531 U.S. at 92).

"The question of whether parties agreed to arbitrate is to be decided by the court; however, if an issue of fact exists with regard to the whether the parties made such an agreement, a trial on that issue is necessary." Envtl. Energy Servs., Inc. v. Cylenchar, Ltd., No. 11-CV-0039, 2011 WL 4829851, at *2 (D.Conn. Oct. 12, 2011) (citing Bensadoun, 316 F.3d at 175).  However, "[a] party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of [its] claim in order to precipitate the trial contemplated by 9 U.S.C.

§ 4." Manning v. Energy Conversion Devices, Inc., 833 F.2d 1096, 1103 (2d Cir. 1987).  "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995).

"Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." Nunez v. Citibank, N.A., No. 08 Cv. 5398, 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009); see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

### IV.  DISCUSSION

#### A. Compelling Arbitration under the FAA

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." AT & T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011).  The FAA "establishe[d] that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  "The Supreme Court has consistently interpreted the FAA as establishing a 'federal policy favoring arbitration agreements.'" Parisi v. Goldman, Sachs & Co., No. 11-5229-CV, 2013 WL 1149751, at *2 (2d Cir. Mar. 21, 2013) (quoting CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 669 (2012)).  "This preference for enforcing arbitration agreements applies even when the claims at issue are federal statutory claims, unless the FAA's mandate has been

'overridden by a contrary congressional command.'" Id. (quoting CompuCredit, 132 S. Ct. at 669; citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991)). However, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1995).

To decide a motion to compel arbitration of claims pursuant to the FAA, a court must: (1) "determine whether the parties agreed to arbitrate"; (2) "determine the scope of that agreement"; (3) "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable"; and (4) "if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." Genesco, 815 F.2d at 844 (2d Cir. 1987) (citing Mitsubishi, 473 U.S. at 626-29). "In addition, generally applicable state-law contract defenses such as fraud, duress, or unconscionability may invalidate arbitration agreements or clauses thereto." Raniere, 827 F. Supp. 2d at 304 (citing Concepcion, 131 S. Ct. at 1746).

In the interests of judicial economy and of avoiding extensive legal analysis that may prove to be moot depending on the shifting landscape of the law regarding arbitration in the Second Circuit, the Court focuses solely on the two contested issues that are at stake in Raniere and Amex III and that make a stay appropriate in this case.

**B. Amex III**

In Amex III, the Second Circuit addressed the ability of plaintiffs seeking to avoid arbitration and proceed as a class to vindicate their statutory rights if they were forced to abide by the terms of an arbitration clause. Central to the court's analysis in Amex III (and its two prior iterations) was a

8

concern that "the cost of plaintiffs' individually arbitrating their dispute with Amex would be prohibitive, effectively depriving plaintiffs of [their] statutory protection." 667 F.3d at 217; see also In re Am. Express Merch. Litig. ("Amex I"), 554 F.3d 300, 321 (2d Cir. 2009) (finding a class action waiver should be evaluated on a case-by-case basis, considering "the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical impact of the waiver, and related public policy." (internal quotation marks omitted)).

Plaintiffs rely substantially on this line of reasoning in formulating and defending their argument that they cannot vindicate their statutory rights outside of a class action because of the "low-value, high-cost" nature of their individual arbitrable claims. Resp. at 8-15. Defendants, for their part argue that Amex III is not good law and that—even if it were—it is a narrow holding and the instant litigation falls outside of its scope of influence. Reply at 3-8. However, as Defendants themselves note, Amex III is currently before the Supreme Court. Id. at 5 n.2. Therefore, whether Amex III is still good law and, if so, how broadly it applies are both open questions that will be resolved by a decision of the pending petition. These questions leave a substantial degree of uncertainty as to the strength and validity of the parties' proffered arguments.

The Court concludes that it would be imprudent to attempt to anticipate the Supreme Court's decision. Acting now without waiting for the Supreme Court risks a situation in which the Court could issue a decision that might be obsolete before the ink on the page had dried or the echo of the gavel's bang had faded into silence. Further, considering the tremendous expense, time, and effort inherent in resolving a class action, the Court concludes that entering a ruling relying on a decision

currently under review by the Supreme Court invites the prospect of unnecessary further litigation. The Court is certainly mindful of the adage "justice delayed is justice denied" and is wary of slowing the resolution of Plaintiffs' Complaint; nevertheless, the Court does not find that it would be in any party's interest to act precipitously and rely on unsettled law, inviting appeals and further delays.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936). "A court may properly exercise this power when a higher court is close to settling an important issue of law bearing on the action." In re Literary Works in Elec. Databases Copyright Litig., No. M-21-90, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001) (citing Marshel v. AFW Fabric Corp., 552 F.2d 471, 472 (2d Cir. 1977)). In the interests of conserving the Court's and the parties' precious time and resources, the Court therefore invokes its inherent authority and stays this matter pending the resolution of Amex III.

### C. Raniere

"The Second Circuit has not yet addressed the issue of whether an employee's right to participate in an FLSA collection action is a substantive right that cannot be waived in an arbitration agreement." Torres v. United Healthcare Servs., Inc., No. 12 CV 923, 2013 WL 387922, at *4 (E.D.N.Y. Feb. 1, 2013); accord Ryan, 2013 WL 646388, at *3. "Moreover, the few district courts from within this Circuit that have confronted the issue thus far have reached divergent results." Torres, 2013 WL 387922, at *4. While a number of the district courts in this Circuit have found

that this right is waivable,[1] the district court in Raniere stood firm in its declaration that "a waiver of a right to proceed collectively under the FLSA is unenforceable as a matter of law" given that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by statute." 827 F. Supp. 2d at 314.

In arguing that any waiver of their collective rights is unenforceable, Plaintiffs rely substantially on Raniere. See Resp. at 15-21. As they did in opposing Plaintiffs' citation to Amex III, Defendants contend that Raniere is not good law, noting that the case is currently on appeal. Reply at 5, 9.

Given the uncertainty within the Circuit as to the impact of the FAA on FLSA's collective-action provision, see Torres, 2013 WL 387922, at *4, a Second Circuit ruling on Raniere would provide the Court and the parties with much needed clarity.[2] For the reasons discussed in Part IV.B. *supra*, while the Court finds the rationale advanced by the Court in Raniere to be compelling, the Court concludes that it would unwise to venture into the brackish waters of an intra-circuit split when a moment's patience should yield a Second Circuit decision and—with it—smoother sailing. Therefore, the Court *sua sponte* stays this matter pending the Second Circuit's resolution of Raniere.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that this matter is **STAYED** pending the Second Circuit's decision on the

---

[1] See, e.g., Ryan, 2013 WL 646388, at *3-6; Torres, 2013 WL 387922, at *4-6; Pomposi v. Gamestop, Inc., No. 3:09-CV-340, 2010 WL 147196, at *11 (D. Conn. Jan. 11, 2010) ("[T]he right to bring a collective action under the FLSA is a right that can be waived.").

[2] The Court also notes that the district court in Raniere relied at least in part on Amex III. Given the uncertainty regarding Amex III discussed *supra*, the Court concludes that it would be particularly appropriate to tread cautiously in addressing Raniere.

11

appeal of Raniere v. Citigroup Inc., 827 F. Supp. 2d 294 (S.D.N.Y. 2011), and the United States Supreme Court's decision in American Express Co. v. Italian Colors Restaurant, (No. 12-133) ; and it is further

**ORDERED**, that the parties must contact the Court within fourteen (14) days of resolution of either of the above pending cases and must each file a status report with the Court at that point; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

DATED:     March 28, 2013
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge