UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JEREMY SCHAPP; and JAMES COE, on
behalf of Themselves and on Behalf of All
Others Similarly Situated,

         Plaintiffs,

 -against-              6:12-CV-0841 (LEK/DEP)

MASTEC SERVICES COMPANY, INC.;
and HALSTED COMMUNICATIONS,
LTD.,

         Defendants.
_____

**DECISION and ORDER**

**I. INTRODUCTION**

On March 28, 2013, the Court stayed this wage and hour action pending the Second Circuit's decision on the appeal of Raniere v. Citigroup Inc., 827 F. Supp. 2d 294 (S.D.N.Y. 2011), and the United States Supreme Court's decision on the appeal of In re American Express Merchants' Litigation, 667 F.3d 204 (2d Cir. 2012), cert granted sub nom. American Express Co. v. Italian Colors Restaurant, 133 S. Ct. 594 (2012) (No. 12-133). See Dkt. No. 27 ("March Order"). Both decisions have issued. See Am. Express Co. v. Italian Colors Rest. (Italian Colors), 133 S. Ct. 2304 (2013); Raniere v. Citigroup Inc. (Raniere), No. 11-5213, 2013 WL 4046278 (2d Cir. Aug. 12, 2013). Currently before the Court is Defendants MasTec Services Company, Inc. ("MSC") and Halsted Communications, Ltd.'s ("Halsted") Motion to dismiss the Complaint and compel arbitration. Dkt. No. 16 ("Motion"); see also Dkt. No. 1 ("Complaint"). For the following reasons, the Motion is granted.

## II. BACKGROUND

The March Order laid out the facts of this case. See Mar. Order at 2-5. In short, Plaintiffs Jeremy Schapp and James Coe (collectively, "Plaintiffs") filed the Complaint alleging that Defendants failed to pay them overtime as required by the Fair Labor Standards Act ("FLSA") and New York State labor and employment laws. Id. at 3. Defendants then filed the Motion seeking to dismiss the Complaint and compel arbitration based on a dispute-resolution policy to which Plaintiffs agreed by signing an employee-acknowledgment page at the end of an employee handbook. Id.; see also Dkt. Nos. 17-5 ("Policy"); 17-1 ("Schapp Acknowledgment"); 17-2 ("Coe Acknowledgment," together with the Schapp Acknowledgment, "the Acknowledgments"); 34-1 ("Handbook"). Plaintiffs opposed the Motion and enforcement of the Policy on a number of grounds. See id. at 4-5.

In the wake of Raniere and Italian Colors, Defendants seek to have the stay lifted and the Motion granted. See Dkt. Nos. 28-29; 31-32. Plaintiffs have narrowed their opposition to the Motion to a single ground: the Policy's putative non-coverage of their claims against Halsted. See Dkt. No. 34-1 ("Opposition") at 2-7.[1]

## III. LEGAL STANDARD

"In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citation omitted); see also Lismore v. Societe Generale Energy

---

[1] Plaintiffs filed their Opposition after the expiration of the period the Court provided for doing so. See Dkt. No. 33; Opp. They have filed a Motion for a retroactive extension. Dkt. No. 34 ("Extension Motion"). Although Defendants vociferously object, see Dkt. No. 36 at 3-5, the Court grants the Motion.

Corp., No. 11 Civ. 6705, 2012 WL 3577833, at *1 (S.D.N.Y. Aug. 17, 2012) ("In a typical motion to compel arbitration, the Court would apply a standard similar to that of a summary judgment motion . . . and some discovery may be allowable or necessary." (citing DuBois v. Macy's East Inc., 338 F. App'x 32, 33 (2d Cir. 2009))); Santos v. GE Capital, 397 F. Supp. 2d 350, 353 (D. Conn. 2005). "Accordingly, a court must grant a motion to compel arbitration if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." Ryan v. JPMorgan Chase & Co., No. 12 CV 4844, 2013 WL 646388, at *2 (S.D.N.Y. Feb. 21, 2013) (citing FED. R. CIV. P. 56(c) and Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986)).

A fact is material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment." Id. A dispute regarding a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the nonmoving party. See id. A court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

"The question of whether parties agreed to arbitrate is to be decided by the court; however, if an issue of fact exists with regard to the whether the parties made such an agreement, a trial on that issue is necessary." Envtl. Energy Servs., Inc. v. Cylenchar, Ltd., No. 11-CV-0039, 2011 WL 4829851, at *2 (D.Conn. Oct. 12, 2011) (citing Bensadoun, 316 F.3d at 175). However, "[a] party

3

resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of [its] claim in order to precipitate the trial contemplated by 9 U.S.C. § 4." Manning v. Energy Conversion Devices, Inc., 833 F.2d 1096, 1103 (2d Cir. 1987). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995).

"Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." Nunez v. Citibank, N.A., No. 08 Civ. 5398, 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009); see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

**IV.  DISCUSSION**

Plaintiffs acknowledge that the Policy applies to their claims against MSC but assert that it does not apply to their claims against Halsted. See Opp. at 1. The Policy mandates arbitration of "any dispute arising out of or related to Employee's employment with the Company." Policy at 1.[2] The "Company" is defined by the Handbook as "MasTec, Inc., its divisions and affiliates." Handbook at 7.[3] Plaintiffs argue that the Policy is inapplicable to their claims against Halsted because: (1) at the time Plaintiffs signed the Acknowledgments and thereby agreed to be bound by

---

[2] The pagination corresponds to the page numbers assigned by ECF.

[3] The pagination corresponds to the page numbers assigned by ECF.

the Policy, Halsted was a non-extant predecessor, not an extant affiliate, of MasTec, Inc. ("MasTec")[4]; and (2) even if claims arising out of Halsted employment were covered by the Policy, the Policy is not retroactive.  See generally Opp.

**A. Applicability to Halsted**

*1. Halsted is a Subsidiary of MasTec*

Plaintiffs offer no evidence in support of their assertion that Halsted was a non-extant predecessor of MasTec at the time Plaintiffs signed the Acknowledgments.  See Opp.  The only evidence before the Court indicates that MasTec acquired Halsted before Plaintiffs signed the Acknowledgments in 2011, see Compl. ¶ 4; Acknowledgments; Dkt. No. 16-1 ("Paglieri Affidavit") ¶ 3; Dkt. No. 35-2, and that since its acquisition Halsted has continued to exist as a subsidiary of MasTec, Inc. (and therefore was an extant subsidiary when the Acknowledgments were signed). Defendants provide an affidavit from a MasTec associate general counsel who affirms that Halsted is a wholly owned subsidiary of MasTec North America, Inc., which is in turn a wholly owned subsidiary of MasTec.  See Paglieri Aff. ¶ 3.  Defendants also present database information from the New York Department of State indicating that Halsted is an active business corporation.  See Dkt. No. 35-2.  Finally, Defendants present a BusinessWeek listing indicating that Halsted Communications, Ltd. continues to be a subsidiary of MasTec North America Inc.[5]  Dkt. No. 35-3. The Court therefore finds that Halsted was a MasTec subsidiary, not a non-extant predecessor, at the time Plaintiffs agreed to the Policy.

---

[4] Defendant MSC is a subsidiary of MasTec. Dkt. No. 16-1 ("Paglieri Affidavit") ¶ 3.  As noted *supra*, Plaintiffs acknowledge that the Policy applies to their claims against MSC.

[5] Plaintiffs, despite being granted the opportunity to reply to Defendants' submissions, chose not to do so.  See Dkt. No. 33; see generally Docket.

### 2. *A MasTec Subsidiary is an Affiliate of MasTec*

Halted's status as a MasTec subsidiary renders it a MasTec affiliate under the Policy. In a section entitled "Confidential Information," the Handbook broadly defines the term affiliate as any "companies controlling, controlled by or under common control with the Company." Handbook at 53-54. Even if the definition were interpreted to apply exclusively to this Handbook section and not to the Policy, the term "affiliate" is generally defined likewise. Black's Law Dictionary defines affiliate as a " corporation that is related to another corporation by shareholdings or other *means of control*; *a subsidiary*, parent, or sibling corporation." BLACK'S LAW DICTIONARY (9th ed. 2009) (emphasis added). Courts have relied on this definition in finding that the term "affiliate" includes subsidiaries. See Crewe v. Rich Dad Educ., LLC, 884 F. Supp. 2d 60, 75 (S.D.N.Y. 2012); Citibank, N.A. v. Franco, No. 11 Civ. 2925, 2011 WL 6961404, at *4 n.2 (S.D.N.Y. Dec. 29, 2011). Particularly in light of the Court's duty to construe agreements in favor of arbitrability and Plaintiffs' failure to argue that a MasTec subsidiary does not constitute a MasTec affiliate under the Policy, see generally Mem., the Court finds that Halsted constitutes a MasTec affiliate under the Policy. The Policy therefore requires arbitration of disputes arising out of Halsted employment.

**B. Retroactivity**

Plaintiffs also argue that, because their claims arise out of Halsted employment pre-dating their agreement to be bound by the Policy, those claims are not subject to the Policy. See Opp. at 5. But the Second Circuit has held that, in the absence of language explicitly limiting an otherwise broad arbitration agreement to post-agreement disputes, the agreement should be deemed retroactive. See Coenen v. R. W. Pressprich & Co., 453 F.2d 1209 (2d Cir. 1979); see also Ryan, Beck & Co. v. Fakih, 268 F. Supp. 2d 210, 224 n.28 (E.D.N.Y. 2003) ("[W]here, as here, the

arbitration clause did not contain any temporal limitation, the Second Circuit has compelled arbitration despite the fact that the challenged conduct predated the signing of the parties' agreement." (quotation marks omitted)). Here, the Policy applies broadly to "*any* dispute arising out of or relating to [Plaintiffs'] employment" and contains no temporally limiting language. Policy at 1. The Court therefore finds that the Policy applies retroactively to Plaintiffs' claims against Halsted.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion (Dkt. No. 34) for a retroactive extension is **GRANTED**; and it is further

**ORDERED**, that Defendants' Motion (Dkt. No. 16) to dismiss and compel arbitration is **GRANTED**; and it is further

**ORDERED**, that the Complaint (Dkt. No. 11) is **DISMISSED**; and it is further

**ORDERED**, that the parties proceed to arbitration; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

DATED:   March 31, 2014
         Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge